Robert Hutt,                    :
        Plaintiff,              :
                               :
        v.                     :    File No. 2:08-CV-202
                               :
Robert Hofmann, Paul           :
Brosseau, James Seavey,        :
Joshua Rutherford, Stanley     :
Wood, Jeffrey Schmeltz,        :
Brian Kearns, Scott            :
Isenor, Geoffrey C.            :
Fronberg, Kevin Ashburn,       :
Ellen McWard,                  :
        Defendants.            :


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 16)

Plaintiff Robert Hutt, a Vermont inmate proceeding *pro se*, brings this action alleging that prison officials placed him in segregation in violation of his constitutional rights.  The defendants have filed a joint motion to dismiss, arguing that Hutt's claims against them in their official capacities are barred by the Eleventh Amendment, that not all defendants were involved in the alleged wrongdoing, and that Hutt has failed to state a valid constitutional claim.  For the reasons set forth below, I recommend that the motion to dismiss (Paper 16) be GRANTED in part and DENIED in part.

<u>Factual Background</u>

For the limited purpose of ruling upon the motion to dismiss, the facts alleged in the complaint will be accepted as true. Hutt claims that on July 7, 2007, while housed at the Southern State Correctional Facility, he was informed that his cell was to be searched. As a result of the search, officers found home-made shanks. Mattresses from the cell were removed, and another shank was later discovered inside one of the mattresses. Hutt alleges that the mattress with the shank belonged to his cell-mate.

In Hutt's mattress, officers discovered syringes. The complaint contends that the syringes were the type "used for diabetics" but not the type used by the facility's medical department. (Paper 26 at 5). As a result, Hutt was charged with "[p]ossession, manufacture or introduction of any item that constitutes a danger to the order of the facility . . . ." <u>Id.</u> The Inmate Disciplinary Report associated with this offense indicates that Hutt was placed in segregation on July 7, 2007. (Paper 4-2 at 7).

On August 4, 2007, Hutt received a notice of administrative segregation and a notice of hearing. A hearing was held on August 8, 2007, at which segregation was

2

found to be justified. On August 17, 2007, Hutt appealed to the Commissioner of the Department of Corrections ("DOC"). On September 5, 2007, the appeal was granted, the disciplinary violation was expunged, and Hutt was ordered to either be released or granted a new administrative hearing. Id. at 6.

Hutt was again placed in administrative segregation on January 1, 2008 as a result of two convictions for possession of contraband. A hearing was held on January 6, 2008. The hearing officer found cause for segregation, and Hutt again appealed on procedural grounds. On appeal, a department official ordered a new hearing. (Paper 4-2 at 46). Hutt was successful at the second hearing, held on February 27, 2008, and was released from administrative segregation that same day. Id. at 68.

Hutt claims that each of his initial hearings violated his due process rights. Specifically, he claims that he was limited as to the number of witnesses he could call; that witness testimony was itself limited; that confidential informants were used improperly; and that the hearing officer in the January 2008 hearing had a vested interest in the outcome.

His complaint sets forth three causes of action. The first charges that limiting witnesses and witness testimony violated his due process rights, and that the prison Superintendent and Assistant Superintendent failed to ensure that the hearings were impartial. The second cause of action alleges that the prison Superintendent and Assistant Superintendent, upon receiving the Commissioner's rulings on his appeals, failed to correct "the problems of the Staff who played an open roll [sic] in violating plaintiff's rights." This cause also brings general claims against those defendants involved in his disciplinary and administrative segregation hearings. Hutt's third cause of action asserts that the defendants deprived him of his freedom by segregating him "for unfounded infractions" in violation of his rights under the Eighth and Fourteenth Amendments. For relief, Hutt requests a declaratory judgment stating that his rights were violated. He is also seeking compensatory and punitive damages.

## Discussion

I.  Motion to Dismiss Standard

The defendants have moved to dismiss Hutt's complaint for failure to state a claim. Such a motion, filed pursuant

to Fed. R. Civ. P. 12(b)(6), tests the legal rather than the factual sufficiency of a complaint. See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the Court must accept the factual allegations in the complaint as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and draw all reasonable inferences in favor of the plaintiff. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). The standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."

Id.  Additionally, the Court is not required to accept a
plaintiff's legal conclusions as true.  Id.  Finally,
pleadings drafted by a *pro se* party should be liberally
construed.  Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir.
2006).

II.  Eleventh Amendment

The defendants first argue that any claims for damages
brought against them in their official capacities are barred
by the Eleventh Amendment.  The Eleventh Amendment prohibits
suits in federal court brought by citizens against a state
and its agencies, absent a waiver of immunity and consent to
suit by the state or a valid abrogation of constitutional
immunity by Congress.  See, e.g., Puerto Rico Aqueduct &
Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47
(1993); Pennhurst State Sch. and Hosp. v. Halderman, 465
U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars
claims for damages brought against state employees sued in
their official capacities.  See Hafer v. Melo, 502 U.S. 21,
25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of
Vermont's sovereign immunity and no abrogation of that
immunity by Congress.  In fact, the Vermont legislature has

specifically preserved the State's immunity under the
Eleventh Amendment.  See 12 V.S.A. § 5601(g).  Accordingly,
Hutt's damages claims brought against the defendants in
their official capacities should be DISMISSED.

III.  Personal Involvement by Hofmann, Ashburn and McWard

    The defendants next move to dismiss all claims against
former DOC Commissioner Robert Hofmann, prison
Superintendent Kevin Ashburn and Assistant Superintendent
Ellen McWard, arguing that these defendants were not
personally involved in any alleged wrongdoing.

    The complaint alleges that Commissioner Hofmann had
supervisory responsibility for inmate and staff discipline
issues, and was charged with ensuring professional conduct
by DOC staff.  (Paper 4 at 7).  Ashburn is alleged to have
had similar responsibilities within his own facility.  Id.
As to McWard, Hutt claims that she "ignored all in-person
requests as to the manner of the plaintiff's continued
segregation," and was "duty bound" to review Hutt's
procedural claims and confer with Ashburn about his
allegations.  Id.

    Hutt does not allege that either Hofmann or Ashburn
played any direct role in his segregation placements or

related hearings.  Although Hutt did file appeals with the
Commissioner's office, the complaint states that responses
were provided by a Deputy Commissioner.  (Paper 4 at 10).
Even assuming Hofmann's direct involvement in such appeals,
however, the appeals resulted in victories for Hutt and thus
do not provide a basis for liability.

Instead of direct involvement, Hutt claims that Hofmann
and Ashburn had more generalized culpability because of
their roles as supervisors.  The Second Circuit has made
clear that, for a supervisory defendant to be held liable
under § 1983, the claim cannot rest on *respondeat superior*.

> '[S]upervisor liability in a § 1983 action depends
> on a showing of some personal responsibility, and
> cannot rest on *respondeat superior*.'  <u>Hernandez v.
> Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003) (citing
> <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060,
> 1065 (2d Cir. 1989)).  To establish the liability
> of a supervisory official under § 1983, a
> plaintiff must show the defendant's personal
> involvement in the alleged constitutional
> violations.  <u>See</u> <u>Green v. Bauvi</u>, 46 F.3d 189, 194
> (2d Cir. 1995).  By the same token, however, mere
> 'linkage in the prison chain of command' is
> insufficient to implicate a state commissioner of
> corrections or a prison superintendent in a § 1983
> claim.  <u>Ayers v. Coughlin</u>, 780 F.2d 205, 210 (2d
> Cir. 1985); <u>see</u> <u>also</u> <u>Wright v. Smith</u>, 21 F.3d 496,
> 501 (2d Cir. 1994) (noting that a defendant in a §
> 1983 action may not be held liable for
> constitutional violations merely because he held a
> high position of authority).

Supervisor liability under § 1983 "can be shown in

one or more of the following ways: (1) actual
direct participation in the constitutional
violation, (2) failure to remedy a wrong after
being informed through a report or appeal, (3)
creation of a policy or custom that sanctioned
conduct amounting to a constitutional violation,
or allowing such a policy or custom to continue,
(4) grossly negligent supervision of subordinates
who committed a violation, or (5) failure to act
on information indicating that unconstitutional
acts were occurring." Hernandez, 341 F.3d at 145;
see also Colon v. Coughlin, 58 F.3d 865, 873 (2d
Cir. 1995).

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

The claims in this case are that Commissioner Hofmann

and Superintendent Ashburn had overall responsibility for

the conduct of their respective staffs. There is no claim

that either defendant was aware of Hutt's due process

claims, or that any unconstitutional conduct was the result

of a policy or custom created by these defendants. While

Hutt does claim that Hofmann and Ashburn had supervisory

responsibilities, there is nothing in the complaint

suggesting conduct approaching gross negligence. See Curley

v. AMR Corp, 153 F.3d 5, 13 (2d Cir. 1998) (quoting AT&T Co.

v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996)

(stating that gross negligence is conduct that "evinces a

reckless disregard for the rights of others or smacks of

intentional wrongdoing").

The role of Assistant Superintendent McWard is alleged to have been more direct than that of her superiors. Specifically, the complaint states that she received "in-person requests" to review Hutt's segregation as "the hearing held was in violation of the plaintiff's due process rights of law." (Paper 26 at 3). Reading the complaint liberally, Hutt appears to argue that if McWard had responded to his "in-person requests" and reviewed the procedures used in his initial hearing, his first appeal to the Commissioner would have been unnecessary, his second hearing would not have been procedurally deficient, and his time spent in administrative segregation would have been significantly shorter. In sum, Hutt claims that McWard had a duty as a supervisor to "remedy the wrong" in order to limit the harm and prevent procedural flaws from being repeated. <u>Hernandez</u>, 341 F.3d at 145 Consequently, the complaint offers a plausible claim of supervisor liability against McWard, and her motion to dismiss for lack of personal involvement should be DENIED.

As to Ashburn and Hofmann, the complaint does not allege sufficient personal involvement, and all claims against them in their individual capacities should be

DISMISSED.

IV.    Constitutional Claims

Hutt asserts that his constitutional claims fall within the purview of the Eighth and Fourteenth Amendments.  It is not always clear from his filings, however, which allegations underlie these separate claims.  For example, in his opposition memorandum Hutt states that he brings his claims "under the premise of Cruel and Unusual punishment in regards to the actions of segregation in the due process that was violated."  (Paper 24 at 10).  In light of Hutt's *pro se* status, the Court will analyze his claims under both Amendments.

A.    Eighth Amendment

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976); see also Whitley v. Albers, 475 U.S. 312, 319 (1986).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.

11

<u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)).

In order for Hutt to state a claim under the Eighth Amendment, he must show: (1) that the conditions of his confinement resulted in a deprivation that was sufficiently serious; and (2) that the defendants acted with deliberate indifference to his health or safety. <u>Farmer</u>, 511 U.S. at 834; <u>Davidson v. Murray</u>, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Hutt does not provide any description of his conditions of confinement while in administrative segregation. This Court has previously determined that such segregation permits out-of-cell recreation, access to legal materials, access to medical care, and three meals per day. <u>Griffith v. Hofmann</u>, 2008 WL 4682690, at *5 (D. Vt. Oct. 21, 2008). Subjecting prisoners to this form of incarceration does not rise to the level of an Eighth Amendment violation. <u>See</u>,

e.g., Smith v. Fischer, 2009 WL 632890, at *11 (N.D.N.Y. March 9, 2009); Monroe v. Janes, 2008 WL 508905 at *7 (N.D.N.Y. Feb. 21, 2008) (finding that although special segregated housing "may implicate other constitutional rights, [it] does not rise to a level of constitutional significance under the Eighth Amendment and . . . fails to support a claim of cruel and unusual punishment under that provision.").[1] Nor does Hutt allege that the defendants were deliberately indifferent to a substantial risk of harm arising out of his segregation. His Eighth Amendment claim should, therefore, be DISMISSED.

B.   Fourteenth Amendment

Hutt's Fourteenth Amendment claim is procedural in nature, as he complains that he was not allowed to call all of his desired witnesses and that his witness testimony was limited. He also alleges that confidential informants were used improperly, and that one of the hearing officers had a vested interest in the outcome. As a result of these procedures, he was allegedly segregated based upon "unfounded infractions." (Paper 26 at 6-8).

---

[1]   The cited cases involved conditions of confinement in special housing units in New York. Such confinement has been described as placement in a cell for 23 hours per day, exercise one hour per day, two showers per week, and limited book and visitor privileges. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).

The defendants note that, despite the alleged deficiencies, Hutt was provided an effective appeal procedure and was successful on both occasions. They further argue that there was no due process violation because Hutt had no protected liberty interest. Before Hutt can succeed on his due process claim, he must show that he had a liberty interest in not being placed in administrative segregation. See Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998); Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). The existence of a liberty interest will depend, in part, on the severity of the hardship imposed. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Sandin, the Supreme Court ruled that the Constitution does not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," id. at 485, and it is

only where the hardships become atypical and significant that due process standards must be met.  See Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997).

"Factors relevant to determining whether the plaintiff endured 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Palmer, 364 F.3d at 64 (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)).  "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999).

Here, the parties disagree about the number of days Hutt spent in administrative segregation.  The defendants contend that "[b]ased on the allegations in the Complaint, [Hutt] was in administrative segregation for approximately fifty-one days . . . ." (Paper 16 at 2).  In the same motion, they state that Hutt spent "eighty one days in administrative segregation." Id. at 9.  Hutt responds that

he was not released between "at any time from the beginning
of the Disciplinary Segregation to the 1st administrative
segregation . . . and the 2nd time the plaintiff was held in
administrative segregation," and that "[t]he correct time of
the segregation of the plaintiff is over 120 days . . . ."
(Paper 24 at 4).

The Second Circuit has not established a bright-line
rule as to how lengthy a confinement will be considered
atypical and significant.  See Philips v. Goord, 2009 WL
909593, at *8 (W.D.N.Y. Apr. 1, 2009) (citing Hynes v.
Squillace, 143 F.3d 653, 658 (2d Cir. 1998) (citations
omitted)).  The Circuit has determined, however, that
"[w]here the plaintiff was confined for an intermediate
duration –- between 101 and 305 days –- 'development of a
detailed record' of the conditions of confinement relative
to ordinary prison conditions is required." Palmer v.
Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Colon v.
Howard, 215 F.3d 227, 232 (2d Cir. 2000)).  Accepting Hutt's
calculation of his time spent in administrative segregation,
see, e.g., Hernandez v. Goord, 312 F. Supp. 2d 537, 542-43
(S.D.N.Y. 2004) (courts consider as true not only facts
alleged in complaint, but also those alleged in responsive

16

papers on motion to dismiss), the Court should require such a detailed record.

With respect to the conditions of Hutt's segregation, the defendants assert that they were essentially the same as those described in <u>Griffith</u>. 2008 WL 4682690, at *5 (describing administrative segregation as "one hour of out-of-cell recreation per day, access to legal materials, access to medical care, and three meals per day."). Hutt has not challenged this assertion. Nor has he provided any facts about his treatment while in administrative segregation. In <u>Palmer</u>, however, the Second Circuit clearly stated that district courts must make a "fact-intensive inquiry . . . without relying in its familiarity with [restrictive confinement] conditions in previous cases." 364 F.3d at 65.

Additional information about the conditions of administrative segregation in Vermont may be gleaned from the DOC's directive on restrictive housing. <u>See</u> Fed. R. Evid. 201(b); <u>Christman v. Skinner</u>, 468 F.2d 723, 726 (2d Cir. 1972) (proper for trial court to take judicial notice of state prison regulations); <u>Hosendove v. Myers</u>, 2003 WL 2216809, at *1 (D. Conn. Sept. 19, 2003) (taking judicial

notice of Department of Corrections Administrative
Directives).  Specifically, DOC Directive No. 410.06
dictates those conditions in considerable detail, ranging
from the level of ventilation to laundry service and
recreation time.[2]  While these general conditions may have
applied here, the Second Circuit requires an examination of
"the actual circumstances of confinement."  Palmer, 364 F.3d
at 65.  Anything less, assuming that Hutt spent over 101
days in segregation, is insufficient.  Id. at 65-66 ("In the
absence of a detailed factual record, we have affirmed
dismissal of due process claims only in cases where the
period of time spent in [segregation] was exceedingly short
. . and there was no indication that the plaintiff endured
unusual [segregation] conditions.").

The Court must also scrutinize the fact that Hutt
allegedly spent 120 days in administrative segregation.
Using New York cases as a guide, approximately four months
in administrative segregation would not necessarily violate
the Constitution.  See, e.g., Sealey v. Giltner, 197 F.3d
578, 589-90 (2d Cir. 1999) (holding that 101 days spent in

_____

[2]  The directive contains different restrictions for "Phase I" and
"Phase II" administrative segregation.  For example, recreation under Phase II
is daily, while under the more restrictive Phase I, recreation is required for
a minimum of one hour, five days per week.  Hutt does not allege the level of
confinement applied in his case.

conditions that were "somewhat more severe than those of general population" did not impose atypical and significant hardship"); Husbands v. McLellan, 990 F. Supp. 214, 217-18 (W.D.N.Y. 1998) (180 days did not trigger liberty interest); Warren, 985 F. Supp. at 354 (161 days); Trice v. Clark, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (150 days). However, it is not clear from this circuit's case law whether using a New York standard is appropriate for a Vermont inmate.  See Sealey, 197 F.3d at 589 (noting the Seventh Circuit's rule that the appropriate comparison "is with other prisons in the state").

In Sealey, the court posed the question of whether courts should compare a plaintiff's claims to "conditions at the inmate's prison, all prisons in the state system, or all prisons in the nation?", then proceeded to acknowledge that "the conditions of administrative confinement in other [prisons within the state] . . . might well be relevant to an inmates's liberty claim."  Id. at 588-89.  The court did not condone comparisons with prisons in other states. Assuming that comparison with other states is inappropriate, the record in this case needs to be further developed before the Court may dismiss for lack of a liberty interest.

Specifically, the record should include, but not necessarily be limited to, actual comparisons between Hutt's conditions of confinement while in administrative segregation and the conditions for general population; comparisons with other prisoners in administrative and protective confinement; conditions of administrative segregation confinement at other Vermont facilities; and the "frequency and duration of confinements imposing significant hardships." Id. at 589; see also Palmer, 364 F.3d at 64-67; Welch v. Bartlett, 196 F.3d 389, 393 (2d Cir. 1999). Because the current record is insufficient, the defendants' motion to dismiss for lack of a protected liberty interest should be DENIED.

V.  Available Remedies

The defendants' final argument is that, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), Hutt cannot collect compensatory damages without alleging a physical injury, and that Hutt alleges no such injury.  The defendants further argue that, although a lack of physical injury does not bar claims for injunctive or declaratory relief, Hutt's transfer to a different prison facility moots any such claims.

A. PLRA

The PLRA states in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that the statute bars claims for compensatory damages arising out of claims of mental or emotional injury. See Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002). The Thompson decision also made clear that § 1997e(e) does not restrict a plaintiff's ability to recover nominal or punitive damages, injunctive relief, or declaratory relief. Id. at 416.

Hutt's complaint does not allege specific physical injuries, although his prayer for relief does cite both physical and emotional harm. (Paper 26 at 11-12). Without an Eighth Amendment claim, however, his only claim is for a due process violation -- a claim that, by its nature, does not inflict physical injury. Accordingly, Hutt cannot seek compensatory damages for his Fourteenth Amendment due process claim. See, e.g., Rivera v. Wohlrab, 2000 WL 1300403, at *1 (S.D.N.Y. Sept. 14, 2000). Any claims for

nominal and punitive damages, however, may proceed.

B.  Declaratory Judgment

In addition to damages, the complaint seeks declaratory relief.[3]  While the defendants concede that the PLRA does not bar such relief notwithstanding a lack of physical injury, they argue that the request is moot because Hutt is no longer incarcerated at the Southern State Correctional Facility.  The docket indicates that Hutt is currently in prison at Lee Adjustment Center in Beattyville, Kentucky.

A prisoner's transfer to a different correctional facility generally moots his request for declaratory and injunctive relief against employees of the transferor facility.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006).  The mootness doctrine will not apply, however, where a claim is "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982)).  This exception requires at least the possibility that the "same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

Here, Hutt a declaratory judgment would have no effect, as Hutt is no longer incarcerated at SSCF.  See Browning

---

[3]  No injunctive relief has been requested.

<u>Debenture Holders' Comm. v. DASA Corp.</u>, 524 F.2d 811, 817
(2d Cir. 1975) (where "the remedy sought is a mere
declaration of law without implications for practical
enforcement upon the parties, the case is properly
dismissed").  Although he has not argued against mootness,
any claim of a future transfer back to SSCF, and subsequent
placement in administrative segregation without adequate
process, would be purely speculative.  <u>See</u> <u>Preiser v.
Newkirk</u>, 422 U.S. 395, 403 (1975); <u>Murphy v. Hunt</u>, 455 U.S.
478, 482-83 (1982); <u>Smith v. Dudley</u>, 190 F.3d 852, 855 (8th
Cir. 1995); <u>Higgason v. Farley</u>, 83 F.3d 807, 811 (7th Cir.
1995).  Consequently, his request for declaratory judgment
should be DISMISSED as moot.

VI.  <u>Leave to Amend</u>

     The Second Circuit has urged that "when addressing a
*pro se* complaint, a district 'court should not dismiss
without granting leave to amend at least once when a liberal
reading of the complaint gives any indication that a valid
claim might be stated.'"  <u>Thompson v. Carter</u>, 284 F.3d 411,
416 (2d Cir. 2002) (quoting <u>Branum v. Clark</u>, 927 F.2d 698,
705 (2d Cir. 1991)); <u>Davidson v. Flynn</u>, 32 F.3d 27, 31 (2d
Cir. 1994) ("sparse pleadings by a *pro se* litigant

23

unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action"); Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

In this case, Hutt has failed to allege sufficient personal involvement on behalf of Hofmann and Ashburn. He has also failed to specify facts underlying his claims of physical harm. Furthermore, his failure to allege facts with regard to his conditions of confinement undermines his Eighth Amendment claim. As a result of these shortcomings, I am recommending dismissal of all claims against Hofmann and Ashburn, all claims for compensatory damages, and Hutt's Eighth Amendment claim.

Nonetheless, it is conceivable that re-pleading could give rise to valid claims on these points.[4] Accordingly, limited leave to amend is GRANTED. If Hutt wishes to revive these claims by filing an amended complaint containing additional, well-founded and non-conclusory allegations, he may do so within 30 days of the Court's Order with respect to this Report and Recommendation.

---

[4] The same cannot be said for Hutt's official capacity claims for damages, or his request for declaratory relief.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 16) be GRANTED in part and DENIED in part. All claims for damages brought against the defendants in their official capacities should be DISMISSED with prejudice. Hutt's claim for declaratory judgment should be DISMISSED without prejudice as moot. Claims brought against defendants Hofmann and Ashburn in their individual capacities, Hutt's Eighth Amendment claim, and all claims for compensatory damages should be DISMISSED without prejudice as well, subject to re-pleading within 30 days of the Court's Order on this Report and Recommendation. Failure to file a timely amended complaint will result in the dismissal of those claims with prejudice.

Dated at Burlington, in the District of Vermont, this 30th day of July, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).