UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robert Hutt,

    Plaintiff,

v.                                             Civil Action No. 2:08-CV-202

Robert Hofmann, Paul Brosseau,
James Seavey, Joshua Rutherford,
Stanley Wood, Jeffrey Schmeltz,
Brian Kearns, Scott Isenor, Geoffrey C.
Fronberg, Kevin Ashburn, Ellen McWard,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 36 and 39)

Plaintiff Robert Hutt, a Vermont inmate proceeding *pro se*, brings this action alleging that prison officials placed him in segregation in violation of his due process rights. The Defendants have moved for summary judgment, arguing that Hutt's time in segregation did not trigger due process protections. Also pending before the Court is Hutt's motion to compel discovery. For the reasons set forth below, the motion to compel (Doc. 39) is DENIED, the motion for summary judgment (Doc. 36) should be GRANTED, and this case should be DISMISSED.

## Factual Background

The Amended Complaint (Doc. 29) alleges that in 2007-2008, Hutt was incarcerated at Vermont's Southern State Correctional Facility ("SSCF"). On July 7, 2007, correctional officers searched his cell and found home-made shanks in a mattress.

Hutt alleges that the mattress containing the shanks belonged to his cell-mate.

In Hutt's mattress, officers discovered syringes. The Amended Complaint contends that the syringes were the type "used for diabetics" but not the type used by the facility's medical department. (Doc. 29 at 4.) Hutt was subsequently charged with "[p]ossession, manufacture or introduction of any item that constitutes a danger to the order of the facility," *id.*, and placed in disciplinary segregation. (Doc. 4-2 at 7).

On August 4, 2007, Hutt received a notice of administrative segregation and a notice of hearing. A hearing was held on August 8, 2007, at which segregation was found to be justified. (Doc. 36-6 at 2.) On August 17, 2007, Hutt appealed to the Commissioner of the Department of Corrections ("DOC"). On September 5, 2007, the appeal was granted, the disciplinary violation was expunged, and it was ordered that Hutt either be released or granted a new administrative hearing. (Doc. 36-7 at 1.) At the second hearing, the hearing officer found insufficient grounds for continued segregation. (Doc. 36-8 at 2.)

The Amended Complaint asserts that Hutt was again placed in administrative segregation on January 1, 2008 as a result of "allegations of the importation of contraband." (Doc. 29 at 5.) A hearing was held on January 6, 2008. The hearing officer found cause for segregation, and Hutt appealed on procedural grounds. On appeal, a department official ordered a new hearing. (Doc. 36-13 at 1). Hutt was successful at the second hearing, held on February 27, 2008, and was released from administrative segregation that same day. (Doc. 36-14 at 2.)

Hutt claims that each of his initial hearings violated his due process rights. Specifically, he claims that he was limited as to the number of witnesses he could call; that witness testimony was itself limited; that confidential informants were used improperly; and that the hearing officer in the January 2008 hearing had a vested interest in the outcome. Hutt also claims that his segregation based upon "unfounded charges" violated his rights. (Doc. 29 at 6-7.)

At summary judgment, the Defendants' statement of undisputed facts confirms that Hutt was charged with a disciplinary rule violation on July 7, 2007 after weapons were discovered in his cell. He spent the next 31 days, through August 7, 2007, in disciplinary segregation. (Doc. 36-1 at 1.) An administrative segregation hearing was held on August 8, 2007, and Hutt was placed in such segregation through September 5, 2007. After Deputy DOC Commissioner Andrew Pallito ordered that Hutt either be granted a new hearing or released, a second hearing was held and Hutt was allegedly released from administrative segregation on or about September 11, 2007. Consequently, Hutt is reported to have spent approximately 35 days in administrative segregation in 2007 prior to his release. (Doc. 36-3 at 2.) Hutt disputes that he was released into general population at that time, or at any time prior to February 2008. (Doc. 42 at 2.)

According to the affidavit of Matthew Burlew, a Correctional Services Specialist, Hutt was released into general population and remained there from September 12, 2007 through December 1, 2007. Burlew's testimony is based upon disciplinary violation documentation, and upon a DOC database that tracks inmate detentions. *Id.* at 1-2. The

3

database records show that Hutt was being held in administrative segregation on September 5, 2007, but not as of September 12, 2007, and that he did not return to administrative segregation until January 2008. (Doc. 36-4 at 19, 21, 49.) Hutt calls the DOC's documentation "unfounded." (Doc. 42 at 2.)

It is undisputed that on November 27, 2007, Hutt's urinalysis tested positive for THC/Cannabinoids. On December 2, 2007, he was caught allegedly possessing contraband in the prison yard. According to the Burlew affidavit, Hutt spent 35 days in disciplinary segregation on the possession charge. (Doc. 36-3 at 2.) As discussed above, he was given a hearing on January 6, 2008, and was thereafter placed in administrative segregation. He appealed, was successful at a second hearing, and was released from administrative segregation on or about February 27, 2008. Hutt's time spent in administrative segregation in January and February 2008 thus allegedly amounted to 52 days. *Id.*

The Defendants have also submitted evidence regarding the conditions of Hutt's segregated confinement. Each time Hutt was placed in segregation, whether disciplinary or administrative, he was housed in Unit F-1. Burlew's affidavit submits that the conditions in Unit F-1 are "substantially similar to the conditions for the general population." *Id.* Burlew explains that the physical conditions are similar with respect to heat and lighting, but that unlike general population, prisoners in segregation do not have to share a toilet and sink. *Id.* at 2-3. DOC Directive 410.06 provides that inmates in segregation must be allowed access to legal resources, religious personnel, a case worker,

4

and one hour of recreation at least five days per week.  (Doc. 36-5 at 3-4.)  Hutt contends that his conditions of confinement were not substantially similar to those in general population because he was not allowed to "visit with other inmates, venture out to the general population yard or visit the . . . Law Library."  (Doc. 42 at 2.)

In a previous order, the Court dismissed Hutt's claims against the Defendants in their official capacities.  Because Hutt was no longer at SSCF, the Court also dismissed his claims for declaratory relief as moot.  The Court dismissed without prejudice the claims brought against Defendants Hofmann and Ashburn in their individual capacities, Hutt's Eighth Amendment claim, and all claims for compensatory damages, subject to re-pleading within 30 days.  (Doc. 28.)  Hutt subsequently filed a timely Amended Complaint.  (Doc 29.)  The Amended Complaint does not bring claims against Hofmann and Ashburn, and does not include an Eighth Amendment claim.  Hutt has also dropped his request for a declaratory judgment.  He is still seeking compensatory damages.  *Id.*

## Discussion

I.  **Summary Judgment Motion**

   A.  **Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The burden of demonstrating the absence

of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party meets its burden, the non-moving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 322-23. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. At summary judgment, the Court must draw all factual inferences in favor of the non-moving party. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005).

### B. Liberty Interest

The Defendants argue that there was no due process violation because Hutt had no protected liberty interest. Before Hutt can succeed on his due process claim, he must show that he had a liberty interest in not being placed in segregation. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). The existence of a liberty interest will depend, in part, on the severity of the hardship imposed. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Sandin*, the Supreme Court held that the Constitution does not require all restrictive confinement within a prison to be preceded by due process. Instead, a prisoner must receive due process when the conditions will constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* "Discipline by prison officials in response to a wide range of misconduct falls within the

expected parameters of the sentence imposed by a court of law." *Id.* at 485. Consequently, it is only where the hardships become "atypical and significant" that due process standards must be met. *See Miller v. Selsky*, 111 F.3d 7, 9 (2d Cir. 1997).

"Factors relevant to determining whether the plaintiff endured 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

Because time spent in segregation is a factor for consideration, the Court must determine whether there is an issue of material fact as to how much time Hutt spent in segregation in 2007 and 2008. Hutt claims that he was not released from administrative segregation in September 2007, and was instead confined from August 2007 through February 2008. The documentation submitted by the DOC contradicts Hutt's claim. Specifically, the data with respect to inmate classifications shows that Hutt was not in segregation in either October or November of 2007. (Doc. 36-4 at 21-39.) Furthermore, the record includes a detailed report about Hutt receiving contraband from another inmate while in the prison recreation yard in December 2007. (Doc. 36-10 at 8.) This report

cannot be reconciled with Hutt's statement that, while in administrative segregation, he was not allowed to be with other inmates. (Doc. 42 at 2.)

It is well established that questions of credibility are almost never to be resolved on a motion for summary judgment. *See Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 174 (2d Cir. 2006); *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). There is, however, a narrow exception to this rule. In *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005), the Second Circuit explained that the exception applies when the non-movant "relies almost exclusively on his own testimony, much of which is contradictory and incomplete," and the evidence is so lacking in credibility that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find in his favor. "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys*, 426 F.3d at 554 (quoting *D'Amico v. City of New Y*ork, 132 F.3d 145, 149 (2d Cir. 1998)).

Hutt contends that he was segregated for a continuous period of time exceeding 120 days. The record evidence, however, includes uncontroverted DOC data and contradictory assertions by Hutt himself that render his allegations unreliable. The duration issue may not be material since, as discussed below, Hutt's conditions of confinement may not have been so severe as to give rise to a liberty interest. Assuming materiality, however, the Court should find that "no reasonable person would undertake the suspension of disbelief necessary to credit [Hutt's] allegation." *Id.* at 555 (citation

omitted). Accordingly, the Court should accept the evidence showing that Hutt was placed in administrative segregation for approximately 32 days in August and September 2007, and again for approximately 52 days in January and February 2008. The record also shows that Hutt twice spent up to 32 days disciplinary segregation in 2007 and 2008.

The next question is whether such periods of time satisfied the *Sandin* standard for a due process violation. The Second Circuit has not established a bright-line rule as to how lengthy a confinement will be considered atypical and significant. *See Philips v. Goord*, 2009 WL 909593, at *8 (W.D.N.Y. Apr. 1, 2009) (citing *Hynes*, 143 F.3d at 658 (citations omitted)). The Circuit has held, however, that "[w]here the plaintiff was confined for an intermediate duration -- between 101 and 305 days – 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)). For periods shorter than 101 days, "[c]ourts in this Circuit [have] routinely h[e]ld that an inmates' confinement in special housing . . . absent additional egregious circumstances, does not implicate a liberty interest." *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1214 (S.D.N.Y. 2003) (citations omitted); *see also Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 355 (S.D.N.Y. 2001).

In this case, Hutt's consecutive periods of time in segregation were shorter than 100 days, while the conditions of his confinement cannot reasonably be described as egregious. The Defendants submit that the conditions in Unit F-1 are similar to those in general population, particularly with respect to heat, lighting and access to bathrooms. Directive

9

410.06 indicates that segregated inmates are also provided "regular institutional meals," recreation at least five times per week, and the same mail availability as regular inmates. (Doc. 36-5 at 8.)   Hutt disputes the Defendants' characterization of segregation conditions only to the extent that he was not allowed to "visit with other inmates, to venture out to the general population yard or to visit the Library . . . or other areas in the facility while in segregation."   (Doc. 42 at 2.)   In other words, segregation meant, as the term implies, that Hutt was kept separate from other inmates.

There is no suggestion in the record that Hutt's confinement in segregation was any different from the confinement experienced by other inmates.   Nor does the record indicate such harsh conditions that a limited stay in either disciplinary or administrative segregation would give rise to a liberty interest.   *See, e.g., Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (holding that 101 days spent in conditions that were "somewhat more severe than those of general population" did not impose atypical and significant hardship).   Indeed, even if the Court were to accept Hutt's claim that he was incarcerated for over 120 days, the conditions of his segregation did not differ so significantly from those of the general population as to render his situation an "atypical and significant hardship."   *Palmer*, 364 F.3d at 64.

Furthermore, the Second Circuit recently reiterated the principle that "[a]n inmate 'who experiences a deprivation arising under mandatory rules has no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison with sufficient regularity that such deprivation is

10

typical.'" *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Welch v. Bartlett*, 196 F.3d 398, 392 (2d Cir. 1999)). The database evidence submitted by the Defendants indicates that disciplinary and administrative segregations were imposed regularly in 2007 and early 2008. (Doc. 36-4). According to the Burlew affidavit, the average length of stay in administrative segregation was thirty to sixty days, and Hutt's time spent in segregation fell within this typical span. (Doc. 36-2 at 2-3.) Finally, there is no indication in record that the conditions of Hutt's segregation were out of the ordinary, as Hutt's primary complaint is that he was isolated from other inmates.

Given Hutt's length of stay in segregation and the conditions of that segregation, I recommend that the Court reject his claim to a liberty interest, and GRANT the Defendants' motion for summary judgment.

## II. Motion to Compel

In response to the motion for summary judgment, Hutt has filed both an opposition memorandum (Doc. 40) and a motion to compel discovery responses (Doc. 39). The motion to compel argues that Hutt is unable to properly oppose the motion for summary judgment until certain discovery materials have been provided. In a supporting affidavit, Hutt questions the value of the Burlew affidavit, claiming that it "does not make mention of [Burlew's] participation or [his] knowledge of the incidents that the plaintiff has submitted for his civil action, however submits so-called records of the plaintiff's segregation time." (Doc. 40-1 at 1.) Hutt claims that he has requested "this information" in the course of discovery, but that counsel for the Defendants has responded with only "conjectures and

assumptions of burden of proof . . . ." *Id.* at 1-2.

Under Rule 56(f), a Court may decline to grant summary judgment if the non-moving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). In the Second Circuit, a Rule 56(f) motion must be supported by an affidavit that demonstrates: "(1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and (2) how those facts are reasonably expected to create a genuine issue of material fact; and (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *see Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). "Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). While a "bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment, . . . a party against which summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'" *Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 149 (2d Cir. 2009).

In this case, it is not clear what additional information is required. With the Burlew affidavit, the Defendants have submitted copies of a spreadsheet that documents

segregation time, as well as documentation of disciplinary hearings and violations. In other words, they have provided the documentation that supports their factual assertions with respect to Hutt's time in disciplinary and administrative segregation.

Hutt complains that Burlew does not have personal knowledge of the incidents that underlie his legal claims. The purpose of the Burlew affidavit, however, is to authenticate the DOC records that show when, and for how long, Hutt was in segregation. The fact that Burlew did not witness any of the actual events in question does not discount the value of his testimony, or more importantly, the value of the DOC's documentation.

Hutt also asserts that certain "materials" have not been provided. In response, the Defendants submit that they have "produced all the due process hearing packets for the proceedings that Mr. Hutt contests in this action. . . [including] incident reports, confidential informant forms and other evidence relied upon by the hearing officer. In addition, the materials produced include the databases showing that Mr. Hutt was not in disciplinary segregation for the length of time alleged in his pleadings." (Doc. 44 at 13.) Given that these documents have been provided, both in discovery and, to a large extent, in the summary judgment filings, it is not clear what else Hutt requires in his effort to refute the Defendants' "so-called records."

The Defendants object generally to Hutt's interrogatories on the ground that they greatly exceed the number of interrogatories allowed under the Federal Rule 33(a). Irrespective of the number of interrogatories, the substance of Hutt's questions is often objectionable. Indeed, some of his interrogatories seek information that is beyond the

13

usual reach of discovery, such as places of birth, criminal and bankruptcy histories, employment-related misconduct, and policies and training relating to prison searches. Even questions relating to due process proceedings, although perhaps discoverable, are not material to the fundamental question at summary judgment, which is whether Hutt had a liberty interest that gives rise to due process protections.   With respect to document production, the Defendants have produced significant documentation with regard to the due process proceedings, Hutt's time spent in segregation, and the conditions of that segregation.   Aside from these materials, the Court is left to speculate as to what other "materials" might supplement, or call into doubt, what Hutt characterizes as "so-called records."

The Second Circuit has held that, in considering a Rule 56(f) motion, a district court must ensure that "the discovery sought [is] material to the opposition of the summary judgment motion."   *Sage Realty Corp. v. Ins. Co. of North America*, 34 F.3d 124, 128 (2d Cir. 1994) (citation omitted); *see also The Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 531-32, 534, 548 (S.D.N.Y. 2005).   Here, Hutt has failed to show that any outstanding discovery would reveal evidence that is material to the Defendants' summary judgment motion.   In the absence of such a showing, his motion to compel is DENIED.

## Conclusion

For the reasons set forth above, Hutt's motion to compel (Doc. 39) is DENIED. Furthermore, I recommend that the Defendants' motion for summary judgment (Doc. 36) be GRANTED, and that this case be DISMISSED.

14

Dated at Burlington, in the District of Vermont, this 29th day of July, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).